May it please the Court, my name is Jasmine Singh on behalf of Appellant Kevin R. Schrubb III. I'd like to reserve three minutes of my time for rebuttal. Just watch the clock, Counsel. I'm here because Pelican Bay State Prison officials violated the due process and equal protection rights of Kevin R. Schrubb. Mr. Schrubb, an inmate at the prison, tried to navigate the complex mailing system and attempted to send his young son in Virginia two children's books. He also attempted to mail out a cap and a pair of shorts from the prison. But when he turned that property over to the prison's shipping department, it was destroyed. Without reason, without notice, and without hearing. But this case is not just about Mr. Schrubb, an indigent prisoner. It's also about his son, who never received his books. And it's also about all of the other indigent prisoners at Pelican Bay who faced the destruction of their property when they turned it over to the prison for shipping. Well, Counsel, with respect to the books, why didn't your client ask to have the books returned? He could have, but due process doesn't require that he specifically request the alternative option be implemented, that he be returned the books. Well, he was given notice, was he not, that it was going to be destroyed? He certainly had the opportunity to have them brought back to him and maybe give them to his son the next time he came to prison to visit. He was actually never given notice that the books were going to be destroyed. He never received that notice until after the fact in both occasions. Well, he did have an appeal. The first appeal that he had says all disallowed personal property is to be sent out at the inmate's expense and not the State's. When they said that, he knew he either had to get his act together or not. That's incorrect, Your Honor. Well, just a minute. It says all disallowed is to be sent out at the inmate's expense and not the State's. Then he goes to the second level, and he's told you cannot designate UPS, FedEx, or any other common carrier as a sole shipper. This is his idea. The mailroom previously allowed him to ship. Then the warden said, inmate has 15 days from the date of this response to inform the property room staff concerning his disposition of the books. If he wants to send it to someone outside, provide the funds. If the inmate doesn't comply, the staff will make a decision as to the disposition. He had full notice of what was going on. He had full notice of the policy for unauthorized property. The difference here is the books were permitted property in the prison. He was specifically allowed to have them, and he turned them over voluntarily for shipping. The policy that the prison applied at each appeals screening level was for unauthorized property. But I still come back to my question. It was pretty clear to him he wasn't going to have the prison pay for sending these books out. So why didn't he say, okay, let me have them back, and I'll give them to my son when he comes to see me? He wrote the prison letters specifically saying, I'm trying to gather the funds. Can't I use my indigent envelopes as I had in the past? Because the prisoner permitted him. Kennedy, frankly, I don't see anything in the warden's level decision that says that this is unauthorized property. I see unauthorized property in the first appeal. They say it's disallowed. In fact, I was going to ask you if it ever got to his prison cell, and evidently it did. So if it's disallowed, it's one thing and it's not. But the warden level decision doesn't say it's disallowed. The warden level decision is pretty straight. Someone wants to send outside, provide the funds. If someone doesn't comply, then the staff will make the decision. It seems to me, knowing he had 15 days, that it would have been perfectly easy for him to do, just as my colleagues have suggested, well, give it back to me. The warden's He never said give it back to me. He never said anything. He just let it go after that. The warden's level response actually cites Section 3191, which is the provision for unauthorized property. I know what it cites, but I know what it also says, which is very straight. And then when it goes to the director's level decision, then we have a director's level review, again, having nothing to do with unauthorized. It doesn't even say anything about it. But, again, it cites the same provision for unauthorized property. They're not citing either of the mailing requirements for authorized property, which specifically require the prison to return the property to the prisoner and make no mention of having to specifically make that request on the part of the prisoner to get that property. That's your argument. Right. Okay. And the argument is that due process here doesn't require that he specifically request the implementation of the alternative option that exists. He just needs to point to the fact that it does exist. But the problem is, is that, again, you seem to avoid the significant fact. It was not his wanting the book back to his cell. He never did want it back. He never did ask for it back. He never did want it back. He wanted it sent, and he wanted it sent on his terms. And he was told why it wasn't being sent on his terms, and he was given an opportunity to make a decision, and he didn't. On the same token, the prison had the decision to return the books as per the procedure set out by the prison, and the prison made the decision to destroy them rather than follow the procedure set out, which is to return the books. That sounds pretty good, except, again, we have to go on what we do, whether we're exhausted, and then after we have to get to there, we have to get to the district court's decision. And I guess I'm, again, at the same issue. I have a tough time saying that he ever thought he wanted this back. I don't have anything in the record that said he wanted it back. I don't have anything in the record that said he was just being just as hard-nosed as he could, you're sending it on my terms, and if you don't, too bad. Regardless of whether he specifically requested the returning of the books, he wrote the prison more than five letters specifically asking if he could use the indigent envelopes, which was refused, asking if the property was going to be destroyed, asking if it had been destroyed, and specifically requesting notice before destruction. And he never received those things. It wasn't until August of 2007 that he received notice of the destruction of the books, and that notice indicated that the property had been destroyed in April, four months previous. And that destruction notice took place three days before the completion of the director's level appeal. So even before this appeals process was over, this property had been destroyed. Well, your big burden here, Counselor, is, first of all, to show you have a protected property interest, and then second of all, if you do, show you were deprived under insufficient procedures. I have a tough time understanding how it was insufficient procedure when, in this particular situation, the notification of the prison after November 21st didn't provide him with all the due process required. The issue here is that the procedure followed is the wrong procedure. That's the de facto policy that's going on in the prison, is whether you're turning over authorized or unauthorized property as an indigent inmate. That property is disposed of and destroyed when you don't have the funds to avoid the case. What did your client do when he got the warden-level decision? Did he do anything about that? Did he do anything in the 15 days? After the final level appeal, after the director's level appeal? Oh, after the warden-level decision. The warden's decision.  When's the next letter he wrote? The next letter he wrote was in August of 2006. And the warden-level decision was January 24, 2007, saying he had 15 days to do something? So that appeals process proceeded until April of 2007. There were three appeals there. Well, be specific. With respect to the January 24th decision saying he had 15 days, number one, you don't dispute he actually got that notice? No. All right. What happened in that 15 days? He – first he filed a 602 concerning his inability to ship the goods, and then he received this notice that he was unable to. It was – it proceeded through three levels before he wrote any more letters. I'm asking you, what happened between January 24th and 15 days thereafter? Nothing. Okay. Isn't that a problem for your client? For the – it would have been if there was not the process of the appeals within the prison. Okay. You've only got five minutes left. You might want to talk about the cap and shorts issue. Yes. You may have a stronger argument on that one. Or do you? And how do you assess it as between the two incidents, the books being one category and then the sports – it was a cap and shorts, right? Yes. I'd argue that they're both very strong cases or claims. This one for a different reason. Under Scapp v. Kimbrell, where administrative remedies are rendered effectively unavailable, you're excused from having to exhaust them. Here, Shrubb received notice in – notice in June of 2006 that his 602 form regarding the mailing policy was going to be screened out because he was told about his inability to use indigent envelopes as early as January. He let that go. He wrote more letters asking the prison if his property had been destroyed, would be destroyed, or was facing destruction. September 5th, he wrote such a letter. Three days later, he received that letter back with the words 110-06-DISP at the top, indicating that the property had been disposed of in January. The same day, he received a notice indicating that the property had been disposed of in March 19th of that same year. The dates conflicted. Three days later, he filed a 602 concerning the destruction of the books, not the mailing property, indicating that he had just received notice of the destruction. The court – the district court found that Mr. Shrubb received that notice in March. However, there's simply no evidence in the record indicating that he received that notice. So is your appeal because the district court wrongfully determined the facts? Yes. There was clear error. And you're going for clear error? Yes. Can I ask you this? What was the value to him of the cap and shorts? He couldn't wear the cap in prison, and the shorts were too small. So what value did they have to him? The value was that he could have returned them and gotten the money back. So it was the price of those goods. He had actually paid money for them? Yes. Uh-huh. That doesn't emerge very clearly. So the – I went through what the district court had said about this. And, frankly, the district court says that he did not do exhaust, that he didn't exhaust in the appropriate time, that he didn't exhaust. And so aren't we really looking at whether the mailing of the funds or mailing of the cap and the shorts is similar to the destruction of the cap and shorts, such that another complaint is not what he should have done, that he should have exhausted or should have gone to the end on the other complaint, which he didn't do at appropriate time? I mean, I appreciate you want to make them into two different claims, but it seems as if the district court looking at them said they're all the same claim. The district court didn't conflate the claim with the books and the cap and shorts. No. I'm not talking about the books. I'm talking about the mailing of the cap and shorts with the destruction of the cap and shorts. It said it's all the same claim and not exhausted. Right. But they're actually two completely different claims. What is there in this record which would suggest, now the district court's making a finding of fact they're all the same claim, what is there in this record which would say the district court is wrong? Mr. Shrub's second 602 specifically says, I'm contesting the fact that I just found out my shorts and cap were destroyed. I understand he filed a 602, but I guess I'm coming back to the question. What is there that suggests, I mean, prisoners can file a different 602 about everything, but they do and often do file them about the same problem. Every new thing that comes up, they file a new 602. The district court said it's all the same claim. It has not been exhausted. And to me, that's a question of fact. And I'm wondering why me, on appeal, I should be saying to the district court, no, you don't know what a new claim is. There were two claims. Tell me why that's an abuse of discretion or even clear error. It's clear error because Mr. Shrub could not have known that his shorts were destroyed until he received notice. There was simply no factual reason for him to have complained about that in the first  instance. It was clear error for the court. It's disputing whether he actually received the notice. There's no evidence in the record indicating that he did. Okay. In fact, there's a screening form filed by the government on September 10th conceding the fact that he just received notice. And it says regardless of the fact that you just received notice of destruction, it's the same issue. They concede that that notification wasn't until September. Let me ask you a second point. Supposing I assume exhaustion or I assume jurisdiction, which is a big issue. I'm not sure I really can. But assuming that I can, why would this come out any different way if I'm really going to say that on the first instance he got his notice and his opportunity to do what he had to do, it seemed like he got the same notice here. Why would it come out any different way than the first one regarding the books? I mean, there's no question the cap, you can't even argue it was authorized. So why would the shorts not come out the same way? The shorts wouldn't come out the same way as the books. Did they get the same notice? He received the notice of destruction. Well, he got more than a notice of destruction. He got the notice he was told he didn't have sufficient funds to return the items. And then he told them he wouldn't have the funds to pay and couldn't get the funds. And then he sent them some stamps. And then they went back and said, that's not enough, we don't send them with your stamps. It seemed to me he got the same kind of notice he got the first time. Why, assuming I have jurisdiction, would the outcome be any different? Why send it back to the district court to think about it again if it's not going to change the result? Because this was disposed of on a motion to dismiss, we have to wait until the facts are developed on the specific intricacies of what happened with the cap and the shorts. Thank you very much, counsel. The time for your side has expired. We will hear from the State. May it please the Court. Craig Connard from the Attorney General's Office for the Defendants. This case does not concern the ability of a prisoner to be left alone with his property. Rather, it concerns his ability to have that property be held by the government at his leisure and then have it returned to him when he so desires. This the Constitution does not require, nor does the PLRA permit the prisoner to circumvent the remedies put in place by the prison. Addressing the issue of the books first, putting it within the Eldridge procedural due process framework, we see that he had no property interest in the book. At the outset, the books, I should clarify, were not allowed property. As Mr. Schraub admits at ER 137 and 139 that the books were both hardcover books, and the prison regulations at ER 221, I'm quoting, I'm citing Regulation 806F6 here, states that the hardcover books are not permitted in the prison. The prisoner has two choices. The prisoner can either choose to have the cover removed or have the book mailed out to him. Scalia. Is that issue presented to the district court? Domenico. I do not believe so, Judge Smith. Scalia. Because I couldn't find it. This is the first time I've ever heard about this hardcover book stuff. Domenico. Absolutely, Judge Smith. Scalia. Same here. Domenico. Absolutely, Judge Smith. Scalia. I mean, the bottom line is, I was going to ask you, why is it on one appeal, the first, they called them unauthorized, disallowed books, and thereafter they didn't say anything about disallowed? And why did you argue before the district court there's no property interest in any kind of property in the prison? My understanding of the appeals in the prison was that the, you know, the first level they said this is disallowed, and it sort of continued upwards with the presumption and citations to regulations regarding disallowed property. Indeed, the only regulation that permits the prison to hold on to property is 806z, which pertains to disallowed property. Mr. Shrub, when he asked the prison to hold on to that property, Mr. Shrub effectively was admitting that the property was disallowed, and that's precisely the reason why he did not ask for the property back. As far as the district court is concerned, the reason he did not have the right to possess the property was simply because it was unauthorized. But even if the property was authorized, what Mr. Shrub is effectively requesting is that, you know, property be handed to the prison, and then the prison mailroom keeps track of each individual item of property and determines whether that property is allowable and not allowable in order to return it to the prisoner. That is actually quite difficult to do, because the determination of allowability depends upon the classification of the prisoner, it depends upon the amount of property the prisoner already has in his cell, it depends upon the unit in which the prisoner is housed. So having to make that determination in the prison mailroom is actually quite a hard one when you multiply that by 3,300 prisoners and the amount of items, the numerous items one prisoner may have. It seems a little difficult in this particular situation to have this new fact thrown in without having the district court have a chance to think about it. Because it seems to me the district court made the fine decision, at least as to what the district court did, that there's just no property interest in these books allowed or disallowed, which I was going to challenge, frankly. Well, Judge, on the prison regulations, it doesn't seem to me that could be the case. Gannon, even if you assume the property is allowed here, our point is that what ends up happening is that you're requiring the prison mailroom to then make a determination once it has possession of an item of property whether the item of property is allowed or disallowed, and at a certain point in time keep track of each individual item. Mr. Shrovel-Lone at ER 132 talks about the numerous items of property he had at hold in his prison, at the prison. He asks about his books, CAT scans, X-rays and photographs. I mean, all of the one prisoner had all these items with the prison. Having the mailroom keep track of all these items for each individual prisoner and then have it returned would be impossible, which is indeed why the regulation does not permit the staff to hold on to items unless they're disallowed. Did it, did, I mean, my worry is that with the exhaustion that's taken place here, at the first appeal it was said to be disallowed property, but then at the second level it isn't even said to be disallowed property, and at the director level it certainly  isn't said to be disallowed property. So I'm wondering if really, I mean, on what basis am I supposed to support the decision of the prison? Are you suggesting I'm to do that on an argument not made by the prison? I think that there are two reasons, Judge Smith. The first reason is that within the appeals process, the citations are all made to regulations pertaining to disallowed property, and Mr. Shrovel as well. Well, the regulations about the property have nothing to do with what you've just said. I mean, the regulations, I looked at every one of them, and if I look at those regulations pretty carefully, one is about, well, we can decide what's allowed and what isn't allowed, but then when I look at the other parts of the prison regulations, they allow the prisoner to have property all the time. In fact, they force the prison to transfer that property with the prisoner. In fact, they allow that that property is something the prisoner has a right to, so I've got to balance the two regulations. I can't come out the same way the district court does, given that it is the State or the prison who's to determine the rights to rely on a regulation that says, well, they don't have any, but then there's another regulation that says they do. So then I'm left with the final argument, well, I think they've got a property interest, so did they get the notice. And so just to clarify one point, Judge Smith, which is that here in the regulations at ER-221, it very clearly says that a prisoner cannot possess hardcover books. These books were hardcover books, and the regulations are quite clear on that. But moving on to your second point. But you haven't made that argument before. This is correct, Judge Neumann. We did not make it in the district court, but we're up here on summary judgment. So I'm pointing to the record in the evidence before you. Scalia. Counsel, let's get to the cap-and-shorts issue. I think you may have a problem with respect to the finding made by the district court, and we apply clearly the erroneous review, do we not? Yes, Justice. The finding is a fact? Yes, you do. What is the support for the finding that the notice was actually received? We believe it is clear on the face of the notice at ER-92. But the face of the notice is a document in your possession. There's nothing in the record to indicate that it was actually received by the prisoner. And what troubles me is that when you look at his communication at ER-94, it appears pretty clearly that he's writing as if he'd never known or had never been notified. And it doesn't look contrived to me. It looks as if this is accurate. He never did get that notice. I understand, Judge Oscannon. But a couple of other inconsistencies, because Mr. Shrubb himself refers to different dates as to when he did eventually receive the notice. At ER-33, he says he received the notice in August. At ER-341, he says he received the notice in September. Additionally, with respect to the refusal to mail out his cap-and-shorts, he had failed to appeal that within the appropriate amount of time. So it was quite appropriate for the district court to think, well, if he failed to do that in the right amount of time, he possibly did that with respect to this as well. This appeal. Is it a different claim, Counselor? We believe that it could be a different claim, Judge Smith. That isn't the answer. I mean, if the district court is construing the record and saying it's all the same claim, is that error? I think. It seems to me that it's error. Yes. I mean, I put it to Counselor. I let her decide. I mean, I have clear error. I've got to find clear error. The district court said it's all the same claim. It seems like it is a different claim because he's speaking about the destruction of the property as opposed to refusal to mail out the property. But in this case, the district court is entitled, based upon his failure to exhaust, the mailing out of the property on time. Similarly, it would not be a clear error for the district court to presume that the same thing happened in this instance. Further, if I can point to. If I can point to clear error, assume that there was a notice which went out, but he writes another letter in September that says he doesn't know what happened, and then on the face of that letter it says disposed 11006, and then he goes right to grieving. I'd have a tough time. I don't – I'm kind of like my colleague. I'm trying to figure out what is my evidence in the record on which I can say the district court was absolutely correct. But that's not the standard judgment. I understand. I've got to find – but I don't have any evidence to suggest he got it. The evidence is not that he got it absolutely wrong, which is what is required here. But more than that, even if the district court was absolutely wrong, Judge Smith. Well, frankly, as to whether he got it or not, I've got to find some evidence that he ever got it. And – and – Otherwise the district court was wrong. It's not only error, it's clear. And I will point to ER 132 where Mr. Shrub refers to – where on August the 25th, 2007, Mr. Shrub writes a letter to the prison asking about all sorts of items of property, except the cap and shorts he allegedly believed to be in possession of the mailroom at the time. So it seems a little anomalous for Mr. Shrub to ask about a laundry list of items except these particular items. But beyond that, even if the district court got it absolutely wrong and the notice came to Mr. Shrub in August or September or whatever date, Mr. Shrub seems to have given, the point is that at the appeal screening out process, the screen-out form very clearly says, I quote from ER 536 here, if you believe the screen-out is an error, please return this form to the appeals coordinator with an explanation of why you believe it to be an error. I'm supporting documents. Mr. Shrub did not do that. As you point out, it appears to be clear error for the – for the screen-out to have occurred, treating it as the same claim as the one before. Mr. Shrub did not write a letter saying this was an error, please address this. It appears to have been an innocent mistake on the part of the prisoner. It does not appear to have been a deliberate attempt to prevent him from appealing this. And so you do not have a situation that SAP envisages, which talks about removing the incentives to avoid meaningfully considering grievances. That's what SAP is trying to prevent, and that's not what happened here. If Mr. Shrub had then gone back to the appeals coordinator and the appeals coordinator had ignored him, then perhaps he could come here. But every time an appeal is screened out, you cannot have a prisoner run to district court. You need to give the prisoner a chance to correct an improper screen-out. A rule otherwise would result in that happening. Returning just to the rule. I assume exhaustion. What if you – Isn't the bottom line here, if this is an unauthorized property, which is the first time I've really heard that argument out of the government's mouth, but supposing that it's authorized. Was there appropriate notice given? Absolutely. In this case, there was appropriate notice, because you'll notice that Mr. Shrub, with respect to the cap and shorts, for example, he's told in – on September 9, 2005, we can't send your property out. Immediately, September 22, he sends a letter saying, oh, you know, don't – hold on to it, don't destroy it. If you destroy it, let me know. He clearly understood that there was the possibility of destruction in this particular case. And when Mr. Shrub asks the prison to hold on to property, he is invoking a regulation that pertains to disallowed property that clearly comes to place that destruction. The prison will not hold on to authorized property, because that allows prisoners to get around regulations, placing limits on the amount of property they can hold, because what can end up happening is that the prisoner says, well, I've got excess property. I'm going to give the prison certain items of property to hold on to. And then when I want it back, I'll just have them return it to me. There is no locker room right that California law provides. So thus, if it is allowed property, then the prison had no business holding on to the property in the first place, and Mr. Shrub had no business asking them to do so. But further, as I said, there was – there was sufficient notice given here, because Mr. Shrub clearly contemplated the destruction of the property. If the Court likes, I can briefly address the substantive due process and equal protection arguments. The substantive due process argument is hard for us to tease apart from the procedural due process argument here. We believe it is still the same property interest that I addressed above. The equal protection argument appears, again, to be a weak one, because Mr. Shrub points to no similarly situated nonindigent prisoner who refused to provide money for something to be mailed out and then had the item mailed out. Thank you, counsel. Thank you very much. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Smith